ROSE v. MAAS BROTHERS.

Opinion delivered January 31, 1921.

1. CUSTOMS AND USAGES—CONTRACTS.—It must be presumed that parties to a sale of cotton for October delivery contracted with reference to an established custom of the trade that the seller had until the 31st day of October to make delivery.

2. SALES—INSTRUCTION AS TO REPUDIATION OF CONTRACT.—In an action by the buyers for failure to deliver cotton purchased, an instruction that if, before or at the time of the delivery of the memorandum of sale, the seller stated that the agreement was not binding, then the verdict should be for the defendant, was properly refused, as the statement of the seller did not necessarily repudiate the contract if there was an intent to consummate it and delivery was made for that purpose.

3. SALES—DELIVERY OF MEMORANDUM TO THIRD PERSON.—Delivery of a memorandum of a contract of sale by the seller to a third person was sufficient if that delivery was made for the benefit of both parties.

4. SALES—GRADE OF COTTON.—An agreement to deliver cotton of a certain grade is not complied with by the seller delivering cotton grown by him but not of the grade specified.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*Taylor & Jones,* for appellant; *Rowell & Alexander,* of counsel.

1. The court erred in refusing to give instruction No. 1 for defendant.

2. It was also error to refuse No. 4 for defendant.

3. Also error to refuse to give No. 7 for defendnat.

4. It was error to admit the testimony of E. B. Bloom, and to permit Bloom to answer certain questions.

The plaintiff alleged, and the proof showed, that at the time the contract is alleged to have been entered into, Maas and Rose entered into oral negotiations in which Maas was undertaking to buy from Rose cotton grown by Rose on his plantation near Lake Farm, Arkansas. After the oral negotiations had reached a certain point a written memorandum of agreement was made and signed by both parties. It was written by E. B. Bloom, cashier of the Citizens' Bank of Pine Bluff, in the directors' room of the bank. A contract was made for delivery of the cotton which was binding on both parties, and it was error to refuse the instructions asked by Rose. The contract or memorandum was not binding on Rose unless delivered, and no delivery is shown. There is no testimony to show that Bloom was the agent of Maas, either general or special. The testimony shows that Bloom was more likely the agent of Rose.

A delivery of a written contract is essential to constitute a binding obligation, and a written memorandum executed to avoid the statute of frauds must be delivered before the statute will become inoperative. 51 Ark. 485;

102 *Id.* 377.  See, also, 89 Ark. 191; 128 *Id.* 605.  It can
not be said that the memorandum was an *escrow,* and, it
being admitted that the paper was not delivered to Maas
and the evidence failing to show that it was delivered to
Bloom as the agent of Maas, there was no delivery to
any one so as to make it a binding obligation or take it
out of the statute of frauds.  See 134 Ark. 284.  The
failure to give instructions 1 and 4 are reversible errors.

*Coleman & Gantt,* for appellee.

1.  The memorandum shows for itself that the con-
tention of appellant is not correct.  It specifies the grade
and staple of the cotton to be delivered; and if a dispute
had arisen as to whether the cotton delivered was of the
required class, it would have presented only a question
of fact easily determined.  Even if it be true that appel-
lant was under a misconception as to the binding effect
of the writing he signed, that did not avoid the contract.
223 S. W. 564.  The writing would be sufficient if not
signed by appellee at all.  137 Ark. 414.

2.  If delivery was essential, there was certainly a
sufficient delivery.  77 Ark. 89; 140 *Id.* 579; 97 *Id.* 283;
132 *Id.* 469; 8 R. C. L. 282, 291; 10 Penn. St. 285; 51 Am.
Dec. 478; 140 Mo. 309; 67 Am. Dec. 261; 8 *Id.* 447.  Ac-
cording to the weight of authority, the delivery of a mem-
orandum in writing evidencing a sale of goods is not es-
sential.  L. R. 1 C. P. 1; 2 M. & W. 653; 42 Am. Rep.
343; 26 S. W. 539; 58 S. E. 444; 138 Am. St. Rep. 30; 91
N. E. 509; 88 Pac. 525; 91 N. W. 467; 184 Fed. 419; 25
R. C. L. 675; 3 Ann. Cases 405; 1 Williston on Cont.,
§ 579.

3.  There is no error in the instructions given, and
No. 7 requested by defendant was erroneous and not the
law.  The terms of a written contract can not be varied
by parol testimony.  140 Ark. 182; 218 S. W. 380; 139
Ark. 53; 136 *Id.* 507.  The evidence fully sustains the
judgment, as the value of the cotton, and appellee's dam-
age were fully proved.

SMITH, J.  Appellees, who were the plaintiffs below, are engaged in the business of buying and selling cotton in the city of Pine Bluff under the name of Maas Brothers, and appellant, Rose, who was the defendant below, is a planter engaged in growing and selling cotton and other farm products. On or about October 15, 1919, S. L. Maas, of Maas Brothers, discussed with Rose the purchase of one hundred bales of cotton of an average weight of 500 pounds each which Rose represented had been grown by him on his plantation near Lake Farm, about half of which cotton had then been picked and ginned. After apparently coming to an understanding the parties met in the directors' room of the Citizens' Bank in Pine Bluff, where the details of the contract were again discussed in the presence of Mr. Bloom, a vice-president of the bank. Rose was a customer of the bank and conducted all his business through it, and desired that Bloom should know what he was doing with his cotton. After the details had apparently been agreed upon, Bloom, at the suggestion of one or the other or of both parties, drew up a contract to cover the transaction. That writing read as follows:

"Pine Bluff, Ark., Oct. 15, 1919.

"Mr. A. D. Rose,

Pine Bluff, Ark.

"Dear Sir:

"This will confirm our purchase today for 100—one hundred bales of cotton October, 1919, delivery at 45c per pound, delivered at Pine Bluff, Ark. Fifteen bales 1 1-16 balance 85 bales strict to good middling 1 1-8 to full 1 1-8.

Yours truly,

"Accepted.                              "Maas Bros.

"A. D. Rose."

Rose read and signed the contract and, after doing so, stated that the contract was not valid because it lacked mutuality, inasmuch as it only bound him to sell without binding Maas Brothers to buy. In this he was,

of course, mistaken, as the contract described the cotton sold, the time and place of delivery, the grade and staple, and the price, and confirms the purchase of it that day made from Rose by Maas Brothers.

The testimony is undisputed that Rose did make the statement, after signing the contract, that it lacked mutuality; but the testimony is conflicting as to what thereafter occurred. The testimony of Rose would have supported a finding by the jury that the minds of the parties had never fully met, and that he left the place of conference under the impression that no contract had been made, although he admits that the writing was left in the possession of Bloom with directions to keep.

The testimony of Bloom and Maas support a contrary finding, as, according to their version of the matter, the minds of the parties fully met on all the essential details, and, notwithstanding the objection made by Rose, after signing the contract Rose himself either gave the contract to Bloom to keep for both parties or consented to that action, and Bloom did file it away as the written evidence of the contract which the parties had made. About a week or ten days later Rose requested Bloom to let him see the contract, and cut his signature from it. Bloom told Rose that he was representing both parties and holding the agreement for both of them, and, at his request, Rose put his signature back on the contract.

It was shown that the term "October delivery," appearing in the contract, had a well-defined meaning in the cotton business, and meant that the seller should have until the 31st of that month in which to make the delivery. And it was also shown that it was generally understood in the cotton trade that the standard weight for a bale of cotton is 500 pounds. It must be presumed, of course, that the parties contracted with reference to these established customs of the trade.

Cotton of the kind specified in the contract advanced rapidly in price from about that time until it had reached

—when delivery was due—a price of 60 cents a pound. Maas made demand—before delivery became due—for the delivery of the cotton; but this was refused by Rose. Whereupon this suit was brought to recover the difference between the contract price and the market price. There was a trial and judgment for Maas Brothers, from which is this appeal.

The court, at the request of the respective parties, gave a number of instructions which, in effect, submitted to the jury the question whether the parties had fully agreed on the terms of the contract, and had left the writing with Bloom to evidence that agreement.

The court refused an instruction numbered 1, asked by Rose, which told the jury that if, before or at the time of the delivery of the memorandum to Bloom, Rose stated, in the presence of Maas, "that the agreement was not binding and did not constitute a contract, then your verdict will be for the defendant." This instruction was properly refused. The statement of Rose did not necessarily repudiate the contract if there was an intent to consummate it, and if it was delivered to Bloom for that purpose. The jury might have concluded that, notwithstanding this statement, Rose delivered the writing to Bloom or consented to its delivery to Bloom for the purpose of completing the contract—and there was testimony to support that finding. But the instruction, had it been given, would have withdrawn that question from the jury, and it was therefore properly refused.

An instruction numbered 4, requested by Rose, was also refused. This instruction reads as follows:

"4. If you believe from the evidence in this case that at the time the memorandum of agreement was executed in the Citizens' Bank, that no delivery of the memorandum was made to the plaintiff, then the plaintiff is not entitled to recover in this case. The mere leaving of the memorandum with Mr. M. E. Bloom without instructions as to whom it should be delivered, or the purpose for

which it should be held by him, will not constitute de- livery.''

This instruction was properly refused, as it made delivery of the memorandum to the plaintiff essential; whereas delivery to Bloom would have sufficed if that delivery had been made for the benefit of both parties. The instruction told the jury, however, that leaving the memorandum with Bloom would not constitute delivery unless Bloom was given instructions as to the purpose for which he should hold it and the person to whom he should deliver it.

The jury might have found that directions to Bloom were not necessary as he had heard the entire discussion and wrote the agreement.

It is insisted that no contract was made because the minds of the parties had never fully met on the essential details of the sale. But, if the parties signed the writing set out above for the purpose of executing a contract, there could be no question of the meeting of the minds of the parties, as the writing itself constitutes a complete and enforceable contract, but that question was fully covered by instruction numbered 1, given at the request of Maas Brothers, and instructions numbered 2 and 3, given at the request of Rose. Instruction numbered 2 told the jury there must be a meeting of the minds of the parties with reference to every essential element of the contract, and if the minds of the parties had not so met to find for the defendant.

Instruction numbered 3 told the jury that, as the execution of the contract was denied, the burden of proof was on plaintiffs to prove, by a preponderance of the testimony, that a contract was entered into, and the terms of that contract definitely and mutually understood by both parties, and that plaintiffs could not recover until they had discharged that burden.

An instruction numbered 7, reuested by Rose, was also refused by the court. This instruction would, if given, have told the jury, if damages were assessed,

to take into account the cotton grown by Rose, rather than cotton of the grade and staple described in the memorandum; the instruction being based upon the assumption that the contract had been made with reference to specific cotton. This instruction was properly refused for several reasons. First, Maas demanded the cotton grown by Rose under this contract; and Rose refused to make delivery. The testimony does not show that the first 100 bales to be ginned, with reference to which it is said the parties contracted, did not meet the requirements of the contract. Rose testified in regard to the sale of this cotton, which was sold along with a lot of 153 bales, in which he admitted there was some low-grade cotton. But, besides this, Rose contracted to deliver cotton of specific grade and staple, and that contract could have been complied with by delivering cotton of that grade and staple whether grown on his farm or elsewhere. It was not made a stipulation in the contract that the cotton should come from his farm. *Soudan Plantation Co.* v. *Stevenson,* 83 Ark. 163.

It was his duty, therefore, to deliver cotton of the contract grade and quality, whether it came from his farm or elsewhere, and the instruction on the measure of damages so declared the law.

Other assignments of error are presented; but we think they do not require discussion.

No prejudicial error appears, and the judgment will, therefore, be affirmed.